[Civ. No. 17170.   Second Dist., Div. Three.   May 26, 1950.]

LESTER J. LAIRD, Respondent, v. EDWARD STEINMANN
et al., Appellants.

Gendel & Chichester, H. Miles Raskoff and Bernard Shapiro for Appellants.

Paul R. Hutchinson for Respondent.

WOOD, J.—Prior to February 5, 1946, defendants Edward Steinmann and Abe Goldberg were owners of a laundry business known as the Red Shop Towel Service, in which business they laundered shop towels or wiping rags used by service stations, garages and industrial plants. On said date they sold the business, including the good will, to plaintiff for $22,500. They agreed, as a part of the consideration for the agreement, that they would not carry on a laundry business in the county of Los Angeles for a period of five years after February 1, 1946. The agreement was in writing. Plaintiff paid the purchase price to defendants. At the time of said sale, and prior thereto, the plaintiff was operating a laundry business in Los Angeles known as California Overall Cleaning Company in which business he also laundered shop towels or wiping rags used by service stations, garages and industrial plants, and he also laundered coveralls, overalls and other work clothing. In November, 1947, defendants commenced the operation of a coverall and work clothing laundry in Los Angeles at the place where they had conducted the business which they sold to plaintiff.

This is an action to enjoin defendants from carrying on an industrial laundry business in Los Angeles County and to recover damages for breach of the contract. Judgment was for plaintiff as follows: (1) enjoining the defendants from engaging in any phase of the industrial laundry business in Los Angeles County until February 1, 1951; and (2) for damages in the sum of $5,200. Defendants appeal from the judgment. They also gave notice of appeal from an order denying their "motion to strike" the first amended complaint, and from an order overruling their demurrer to said

complaint. Said orders are not appealable, and the purported appeals therefrom are dismissed.

Appellants contend that their agreement not to carry on a laundry business is contrary to public policy, is void and unenforceable. Their argument is to the effect that even though they agreed not to carry on a laundry business and even though they received a large sum of money for their agreement the plaintiff is not entitled, under the agreement, to be protected with respect to the work clothing part of his laundry business which he was operating at the time the agreement was made, since he did not purchase any good will of a work clothing laundry business from defendants. Section 16601 of the Business and Professions Code provides: "Any person who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county . . . in which the business so sold has been carried on, so long as the buyer, or any person deriving title to the good will from him, carries on a like business therein." Appellants argue also that the business of laundering shop towels or rags for use in industrial businesses or plants is not a business similar to that of laundering work clothing for use in industrial businesses or plants. The court found that the laundry business carried on by defendants (appellants) "is similar to the business conducted by them at the time of the sale to plaintiff and is similar to the business and the good will thereof which plaintiff purchased from defendants, and competes with plaintiff in the operation of plaintiff's business." The evidence supported said finding.

Mr. Clark, a witness called by plaintiff, owns a large industrial laundry in Los Angeles wherein coveralls, overalls, shop towels and machinists' aprons are laundered. He testified that he had been engaged in such business about 15 years; he had been an officer of an industrial laundry association; about all of the 8 or 10 owners of industrial laundries in Los Angeles were members of the association; the shop towel business consists of laundering standard size towels (usually about 18 inches by 18 inches) for industrial plants, which towels in most instances are owned by the laundry and are supplied by it to the industrial plants on a weekly or poundage rental basis; most of the industrial laundries engage in the shop towel supply and laundry business and in the overall and uniform supply and laundry business; generally the customers use both the towel and coverall services; a list of names of users of

any kind of industrial laundry service is valuable in soliciting other kinds of industrial laundry service; a user of the coverall service is a potential user of the shop towel service, and a user of the shop towel service is a potential user of the coverall service; and in his opinion the coverall supply business and the towel supply business are very similar.

Plaintiff has been the owner and operator of the California Overall Cleaning Company since 1945. He testified that said company did all kinds of industrial laundry work including that of laundering and supplying shop towels; he had had experience in purchasing industrial laundry businesses in the Los Angeles area, and that the total amount of such purchases made by him was approximately $300,000; the shop towel business of the type he purchased from defendants competes with the coverall type of supply business which he operates; some of the similarities in the two types of laundry business are that the customers—the gasoline stations, machine shops and manufacturing places—generally use both services, and "they [customers] prefer to do the business with the one company that handles everything"; where a customer has a number of employees, one of them usually takes care of sending and receiving the industrial laundry; and trade lists of customers are of value because they are used to solicit all kinds of industrial laundry business.

Mr. Roth, who was called as a witness by defendants and who had been in the industrial laundry business 18 years, was asked by defendants whether, in his opinion, the shop towel business is considered separate and distinct from the coverall-overall business. He replied that he "wouldn't say that they were separated, distinct as separate businesses. . . . They may be run under separate departments but they can also be run under one business." Mr. Roth had started the California Coverall Cleaning Company in 1933, and he sold it to plaintiff in 1945. He testified on cross-examination that he started the coverall cleaning part of the business first, and then he started the shop towel part of the business in order to be able to compete with others who were giving both services; and that he wanted to get into the two phases of the business because they went together naturally.

Mr. Tubin, called as a witness by defendants, said that he was in the business of washing and renting shop towels and wiping rags, and he had been in that business for 15 years; that the coverall laundry business and the shop towel business are not similar; that when he started his business only one

company was in both the coverall business and the towel business; that "when one did start, why, the others started it as competition for their own service." On cross-examination he was asked if he had noticed a trend during the past 15 years to combine both the shop towel business and the garment business. He replied that has been the nature as time has gone on. He also testified that most of the leaders in the business now handle shop towels and garments, and that they were forced (by competition) to do that.

Whether or not the work clothing laundry business conducted by the defendants was similar to the shop towel business purchased by plaintiff from defendants was a question of fact for the determination of the trial court. As above stated, the court found that said businesses were similar.

Under the provisions of section 16601 of the Business and Professions Code, as above shown, a person who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a certain area for a certain time. The agreement herein was not contrary to public policy or void or unenforceable.

It is to be noted further that the defendants admitted that they did engage for some time (after they made said agreement and at their former location) in the wholesale laundering of shop towels for other retail suppliers. They did such laundry work from the fall of 1947 until about August, 1948. They assert, however, as alleged justification for engaging in such laundry work, that the laundering of shop towels was a small item with defendants. The court found that such business of laundering towels was identical with the business conducted by plaintiff at the time the contract was made. This conduct of the defendants was a further violation of their agreement. It was stipulated that a witness, called by plaintiff, would testify that since March, 1948, the defendants had been laundering work clothing for certain customers who had formerly been customers of plaintiff, that the weekly volume of such business was $35, and that the name of one of those customers was included in the list of customers which was sold to plaintiff. The plaintiff was clearly entitled to the injunction which the court granted.

Defendants contend further that the record contains no basis for an award of damages in excess of $1,575. They refer to the fact that there was no provision in the agreement for liquidated damages, and they assert "plaintiff would base

his arguments upon the good-will value of the particular business that changed hands.'' They argue that the evidence shows the ''highest figure given for the value of a work clothing supply business'' was the estimate of plaintiff that it was ''about 45 times each weekly dollar of business.'' They also argue that the basis in the record for an award of damages was the evidence regarding the loss of business totaling $35 per week, and the evidence regarding said estimate. They arrive at the $1,575 by multiplying $35 by 45.

The record does not show the items which were included by the judge in determining the amount of damages. Plaintiff paid defendants $22,500 for their business, including good will, customer lists, towels, and three trucks. The value of the towels and trucks was about $4,500. The value of the good will and lists was about $18,000. Defendants agreed not to carry on such business for five years from February 1, 1946. They reentered the industrial laundry business in the fall of 1947, and they continued in that business to the time of trial in November, 1948. It therefore appears that defendants engaged extensively in the industrial laundry business in violation of their agreement for more than a year. ''One whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape liability because the damages could not be measured with exactness.'' (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297-298 [149 P.2d 177].) The evidence was sufficient to support the award.

The judgment is affirmed. The appeals from the order denying ''motion to strike'' the first amended complaint, and from the order overruling the demurrer are dismissed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied June 12, 1950, and appellants' petition for a hearing by the Supreme Court was denied July 20, 1950. Edmonds, J., and Traynor, J., voted for a hearing.